## Town of Salida v. McKinna.

1. MUNICIPAL LIABILITY FOR DEFECTIVE STREET.— An incorporated town may be held liable for damages occasioned by a defective street, *provided* there has been a dedication of the street to public use, and an acceptance of such use by the proper authorities.

2. EVIDENCE OF DEDICATION AND ACCEPTANCE.— Evidence that a street through the main business part of a town is a public thoroughfare generally traveled, and that the municipal officers have voluntarily assumed to keep the same in repair, is sufficient *prima facie* to warrant a finding that the street has been duly dedicated and accepted as a public highway.

3. OBJECTIONS, WHEN TO BE PRESENTED.— Objections to pleadings and evidence raised for the first time in this court must be considered, if at all, with much allowance.

4. INDEFINITE TESTIMONY, WHEN INSUFFICIENT.— Upon a cause of action to recover for certain expenses, evidence that the expenditures "might amount to $200 probably" is too indefinite to found a recovery upon.

5. MEASURE OF RECOVERY BY HUSBAND.— Even if a husband may in extreme cases recover for his services in nursing his wife where her injuries have been caused by the negligence of another, the recovery must be for the value of his services as a nurse, and not for the amount of wages lost by abstaining from other employment.

6. Error Relating to Testimony — Cured, When and How.—When certain testimony has been erroneously admitted and submitted to the jury, the error may, under certain circumstances, be cured by a modification of the verdict and judgment so as to save the necessity of a new trial.

*Appeal from District Court of Chaffee County.*

This was an action by Sara McKinna, plaintiff below, for a personal injury occasioned by falling into an excavation in the street of the town of Salida. The excavation was about six feet in width, eight or nine feet in depth, and extended about seventy feet along the sidewalk of the main business street of the town.

The plaintiff testified in substance: " On July 20, 1887, I had occasion to go over to town for some necessaries for the house. * * * I did not know anything about that excavation being there; I had not been by that excavation at all. I did not run against anything; I moved, made one step, and fell." She had fallen into the excavation and was severely injured. The accident occurred about 9 o'clock at night, and there was no light or fence about the excavation at the time.

The plaintiff was a woman fifty-six years old, strong and healthy. She lived with her husband John McKinna, and was the mother of six children. She did the work for the family. The evidence of plaintiff's attending physician shows that her injury consisted of a fracture of the upper thigh bone about two inches below the hip joint. Plaintiff was confined to her bed between three and four months and suffered intense and excruciating pain from her broken limb. Her physician further testified that by reason of the injury the broken limb was at the date of trial (ten months after the accident) one inch shorter than the other; that the injury permanently impaired plaintiff's health, and that he thought she would suffer pain at every change of the weather.

The plaintiff recovered a verdict and judgment for $5,500. The defendant appeals.

Mr. G. K. Hartenstein, for appellant.

Mr. R. K. Hagam, for appellee.

Mr. Justice Elliott delivered the opinion of the court.

The facts of this case are practically undisputed, the defendant having offered no testimony at the trial. Two questions only require consideration upon this appeal.

1. It is admitted by the answer that the defendant below was, at the time of the happening of the injury complained of, a duly incorporated town in this state. It is conceded by counsel for appellant that such a municipality may, under certain circumstances, be held liable for damages occasioned by a defective street, *provided* there has been a dedication of the street to public use, and an acceptance of such use by the proper authorities. But in this case it is contended that neither the allegations nor the evidence show that the street where the injury occurred had been thus dedicated and accepted, so as to make it incumbent upon the town to keep the same in repair.

What does the record disclose in regard to this contention? In the complaint it is alleged in substance that it was the duty of the town to keep its streets in good order; and that the street and sidewalk where the injury occurred were at the time common thoroughfares, constantly and always used by the citizens of said town and others as such. These averments, though not according to the most approved precedents, are sufficient in substance to support a judgment in favor of plaintiff, the defendant having joined issue upon them and gone to trial and verdict without objection. On the trial evidence was given by competent witnesses to the effect that the excavation where the injury occurred was in a street running through the main business part of the town; that both sides of said street were occupied by business houses and residences; that banking houses, post-office, opera house, stores and doctors' offices fronted upon the street; that the street *was a public thoroughfare gener-*

*ally traveled by the citizens of Salida,* and that the excavation was in the sidewalk on the main residence side of the street.

The street and water commissioner testified in substance as follows: The excavation was commenced about the middle of February and completed about the middle of April, 1887. *I gave the owner of the adjacent property who . made the excavation notice,* and he put up a fragile fence. That was in March, 1887. He kept up the fence for some weeks and then it fell down. *I reported the fact to the mayor and he told me to request the owner to put up red lights.* The next night I saw two red lights, one at each corner. The fence did not remain up more than three or four weeks. After that temporary fences were put up at the corners. I think there had not been any lights there for some time before the accident. The owner said it was impossible to keep a fence up. *I reported the same to the committee on streets and they told me to have him put up red lights. I reported him so often I got tired. I reported to the mayor after he allowed the lights to go out, and also to the chairman of the committee on streets and alleys. They instructed me to request or command the owner to put up the fence and also the lights.* I don't think the town took any steps after I notified the officers that the owner failed to keep the lights and the fence up. Probably it was two or three weeks since I had seen any lights before the accident. I had difficulty with the owner of the property. *I was trying to get the water through the street on that side, so that it would run through the business part of the town. I had to put a flume in on the outside to protect the wall. I built a flume at the expense of the city to protect the owner's wall.*

The evidence, as above stated, was sufficient *prima facie* to warrant the jury in finding that the street where the injury occured had been duly dedicated to public use, that the town had accepted and recognized the same as a public highway, and had voluntarily assumed the responsibility of keeping the same in repair. Bouvier's Law Dictionary; 2

Dillon Mun. Corp., sec. 642 and notes; *Manderschid v. City of Dubuque*, 29 Iowa, 73. The evidence was also sufficient to warrant the finding that the proper town officials had due notice, but did not exercise reasonable diligence in their efforts to keep the street where the accident happened free from danger. The special objection that the pleadings and evidence are insufficient to show a dedication and acceptance of the street is raised for the first time in this court, and so must be considered, if at all, with much allowance. If such objection had been interposed in apt time in the court below, the allegations and proof might perhaps have been made more specific. Bliss on Code Pleadings, sec. 438; *Machette v. Wanless*, 1 Colo. 229; *Higgins v. Armstrong*, 9 Colo. 57.

2. As a second and separate cause of action the plaintiff seeks to recover certain damages alleged to have been sustained by her husband by reason of her injuries. The supposed damages of the husband are specially set forth with an averment that he had by writing duly assigned the same to plaintiff. On the trial objection was interposed to the introduction of evidence in support of such assigned claim. The objection was overruled; and the jury were instructed that if they should find for plaintiff they should include in their verdict, in addition to her own damages, the expenses incurred by her husband, and also the value of his services in nursing and attending her.

It is unnecessary to determine whether plaintiff could under any circumstances recover upon the second cause of action as alleged. Even though the husband may in cases of this kind maintain an action for such damages as he himself has specially sustained on account of his wife's injuries, and even though such cause of action may be assignable so as to entitle the assignee to sue in his own name under our practice,— a point we do not decide,— still, the evidence offered in this case was not sufficient to warrant a recovery upon the second cause of action. The husband's testimony was that during his wife's sickness he spent

money for medicines, stimulants and other necessaries for her benefit, and that the same "might amount to $200 probably." This was too indefinite and uncertain to found a recovery upon. He also testified that he lost four months' time from his work at "the round-house of the railroad" in consequence of attending upon his wife during her illness, and so lost his wages, which were from $50 to $53.75 per month. Even if the husband may recover for his services in nursing his wife in extreme cases of this kind, the recovery must be for *the value of his services as a nurse to his sick wife*, and not for the amount of wages lost by abstaining from other employment. There was no testimony showing the value of his services as a nurse. 2 Thompson on Negligence, p. 1240; *Smith v. City of St. Joseph*, 55 Mo. 456.

The submission of the testimony concerning the husband's expenditures and loss of wages to the jury as a basis for increasing the plaintiff's damages, is the only substantial error apparent in the record. It is clear, however, that the jury could not have been led to increase the verdict more than $200 on account of the alleged expenditures, nor more than $215 on account of the alleged loss of time and wages. Hence, the prejudice caused to appellant by the introduction and submission of the improper testimony may be completely removed by a modification of the judgment, and thus the necessity of another trial may be obviated. The supreme court of Wisconsin pursued this course in a similar case. *Kavanaugh v. City of Janesville*, 24 Wis. 618.

In accordance with the foregoing views the judgment is reversed and the cause remanded, with directions to the district court to allow the plaintiff to remit from the verdict the sum of $415, and that upon remitting such amount she may have judgment entered in her favor for the residue of the verdict and costs, *as of the day when the original judgment was rendered.* If plaintiff shall refuse to remit such sum, then the district court is directed to set aside the verdict altogether and grant a new trial. The appellant shall recover costs in this court.

*Reversed with directions.*